# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VELASQUEZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>H. LACKNER,<br><br>　　　　Respondent. | Case No.  1:14-cv-00268-LJO-GSA-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

　　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent is the Warden of Sierra Conservation Center in Jamestown, California.  He is represented in this action by Barton Bowers of the California Attorney General's Office.

## I.

## BACKGROUND

　　　　Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a January 6, 2012, judgment of the Superior Court of California, County of Kern, following his conviction by jury trial.  (Pet. at 1).[1]  Petitioner was sentenced to twenty years of imprisonment pursuant to the three strikes law for carjacking and second degree

---

[1] The page numbers refer to the ECF pagination.

robbery. (Pet. at 1).

Petitioner timely filed a notice of appeal. On August 2, 2013, the California Court of Appeal, Fifth Appellate District, affirmed the judgment. (Pet. at 2). Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on November 19, 2013. (Pet. at 3).

Petitioner filed the instant federal petition for writ of habeas corpus in this Court on February 27, 2014. Petitioner alleges that (1) The trial court erred in denying his motion to suppress the evidence found in violation of his Fourth Amendment rights; (2) The trial court erred in granting prosecution witness Pablo Avalos immunity; (3) Petitioner received ineffective assistance of counsel during his appeal because his attorney did not present the claims that he raises in this petition; and (4) The cumulative effect of the trial errors denied him his right to a fair trial. (Pet. at 5-10).

On April 22, 2014, the District Judge adopted the Magistrate Judge's Findings and Recommendation that Ground One be dismissed from the petition with prejudice. (ECF No. 10). Therefore, this Findings and Recommendation will only address grounds two through four of the petition. Respondent filed an answer to the petition on June 24, 2014. Petitioner filed a traverse on July 25, 2014.

## II.

## STATEMENT OF FACTS[2]

### 1. Prosecution case

In 2011, Pablo Avalos lived in Delano. (4RT[3] at 355-56). On July 13, 2011, he drove to Bakersfield in his daughter's Nissan Frontier, and as he pulled over on Baker Street, two Hispanic men approached him and pulled him from his truck. (4RT at 356, 358-60, 371-72, 378;

---

[2] The Fifth Appellate District did not write a statement of facts because the only claims raised by Petitioner on his direct appeal were whether Petitioner's prison prior should be stricken and whether a $10 fine should be stricken. Petitioner's petition for writ of habeas corpus was denied by the California Supreme Court in a one-line denial.

[3] 4RT refers to Reporter's Transcript on Appeal, volume 4, pages 303-453, which was lodged by Respondent with his Answer.

2

5RT[4] at 460).  One had his hand underneath his shirt.  (4RT at 359, 361, 378).  At their demand, Avalos, fearing for his life, surrendered his keys and wallet, which contained $100. (4RT at 358, 360-62, 372-73; 5RT at 463-64).  The two men spoke Spanish and one had an eagle-head tattoo. (4RT at 362.) After the men left in the truck, Avalos went inside the California Market, where he borrowed a phone to telephone the police.  (4RT at 358, 362, 367-68, 374, 378; 5RT at 462, 475-76).  Avalos spoke to the police at the market. (5RT at 476-77, 494, 500).

Shortly after being notified of the carjacking, Detective Craig Checklenis located the stolen truck. (5RT at 514-15). It was parked unattended on East 10th Street less than two miles from California Market. (5RT at 515-16). A block away, Detective Checklenis saw a person who matched the description of the suspect. (5RT at 516-17, 519). The man, later identified as Petitioner, got into the left rear passenger door of a Ford Explorer in front of his home at 1610 East 11th Street. (5RT at 519-21, 523, 526-27). Detective Checklenis detained him inside the SUV. (5RT at 520). After speaking to Petitioner, Detective Checklenis went to the house and spoke to Petitioner's girlfriend, Kelley Garza, who gave consent for the officers to search the house and the backyard. (5RT at 523, 538, 540-41). In the backyard, Detective Checklenis found Avalos's wallet and keys in a basket underneath a blanket. (5RT at 524-26). Ms. Garza indicated that she knew nothing about the stolen property. (5RT at 523, 527, 542).

In a field show-up, Avalos identified Petitioner as one of the men who had carjacked him. (4RT at 363-64; 5RT at 478-79, 486-88). Officers gave Avalos his truck, keys, and wallet. (4RT at 365-66; 5RT at 526). Avalos also identified Petitioner at the preliminary hearing. (5RT at 471).

After his arrest, Petitioner called his girlfriend more than once from jail. (5RT at 542-43). The jury heard a recording of those calls. (5RT at 552, 567-68). When Ms. Garza asked Petitioner why he "did it," he replied, "I was stupid." (5RT at 544-45). Petitioner said he thought he was "okay" regarding the stolen property "because they didn't find it on his person." (5RT at 553).

---

[4] 5RT refers to Reporter's Transcript on Appeal, volume 5, pages 454-689, which was lodged by Respondent with his Answer.

Before Avalos testified at trial, the prosecutor promised him that he would not be charged with any crime he committed on July 13, 2011. (4RT at 382). The jury heard a recording of a pretrial conversation they had. (5RT at 467-68).

### 2. Defense Case

Petitioner suffered prior felony convictions involving moral turpitude in 1988, 1992, 1993, 1995, 1996, and 1998. (5RT at 576-77). On July 13, 2011, he went to the MLK Jr. Park near his home. (Id. at 577-78). At the park, he spoke to a man he knew as Charlie and a woman he knew as Janet about obtaining heroin. (Id. at 579-81, 584). Janet said she found someone to give them a ride. (Id. at 583-84). That man was Avalos, who was unfamiliar to Petitioner. (Id. at 583-84, 618). Petitioner called an "acquaintance" of his to supply the heroin. (Id. at 583). Petitioner got into Avalos's truck with Charlie and Janet, and Avalos drove them to get the heroin. (Id. at 585). They went to the Flower Street Motel, where Petitioner bought the drugs. (Id. at 587-88). He bought the drugs with money Avalos had given him, went back to the truck, and got back inside. (Id. at 588-89, 632). He gave the drugs to Janet, and they all went back to the park. (Id. at 589-90). Avalos parked the truck, all three got out, and Janet and Charlie went to use the heroin in a bathroom. (Id. at 590, 632). After fifteen to twenty minutes, they returned, and Charlie then left with his friend "Boxer." (Id. at 590-93).

Janet approached Petitioner and asked him to "look out" for her because she was going to sell her body to Avalos. (5RT at 594-95). Petitioner was reluctant, but agreed. (Id. at 596, 626). Avalos drove him and Janet to a vacant home on Baker Street. (Id. at 596, 598). Avalos gave Petitioner the keys to the truck because he did not want Petitioner watching him. (Id. at 599, 627-28, 634, 637). Petitioner listened to the radio for ten to fifteen minutes inside the truck. (Id. at 599-600, 620-21). He then took the truck because he had an appointment to apply a tattoo. (Id. at 600-01, 620-21, 628, 640). He drove the truck home, where the women he was meeting were waiting. (Id. at 601, 603-04, 621). He parked the truck, locked it, and took a wallet from the dashboard so no one would steal it. (Id. at 601-03, 621, 634, 637, 640). He took no money from the wallet. (Id. at 616). He put the wallet and keys in a basket in the backyard. (Id. at 605, 626). He did not put them in the house because his girlfriend does not like Janet. (Id. at 605).

4

He then gathered his tattoo equipment and got into the SUV. (Id. at 606).

Petitioner admitted lying to his girlfriend about his actions, but denied carjacking Avalos or threatening him. (5RT at 607, 609-13, 653).

Raul Campos, Petitioner's friend, went to MLK Jr. Park on the morning of July 13, 2011. (Id. at 664-66). He saw Petitioner with his friend Janet and one or two other people. (Id. at 666-667).

Investigator Juan Garza of the Kern County Public Defender's Office made several efforts and went to several locations to try to locate Janet Smith, but was unsuccessful. (Id. at 669-71, 673-74.)

Recalled by the defense, Pablo Avalos testified that he came to Bakersfield for an "immigration appointment" and to shop at WalMart. (Id. at 679-81). He denied going to MLK Jr. Park, trying to solicit a prostitute, or going anywhere with Petitioner or "Janet." (Id. at 683-85).

## III.

## DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is

therefore governed by its provisions.

**B.   Standard of Review**

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what "clearly established Federal law is," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable

1  application of," [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72 (quoting 28
2  U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ
3  if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
4  question of law or if the state court decides a case differently than [the] Court has on a set of
5  materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at
6  72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite
7  in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405 (quoting Webster's
8  Third New International Dictionary 495 (1976)). "A state-court decision will certainly be
9  contrary to [Supreme Court] clearly established precedent if the state court applies a rule that
10 contradicts the governing law set forth in [Supreme Court] cases." <u>Id</u>. If the state court decision
11 is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed
12 under the pre-AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008) (en
13 banc).

14  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if
15 the state court identifies the correct governing legal principle from [the] Court's decisions but
16 unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at
17 413. "[A] federal court may not issue the writ simply because the court concludes in its
18 independent judgment that the relevant state court decision applied clearly established federal
19 law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411;
20 <u>see also</u> <u>Lockyer</u>, 538 U.S. at 75-76. The writ may issue only "where there is no possibility
21 fairminded jurists could disagree that the state court's decision conflicts with [the Supreme
22 Court's] precedents." <u>Harrington</u>, 131 S.Ct. at 784. In other words, so long as fairminded jurists
23 could disagree on the correctness of the state courts decision, the decision cannot be considered
24 unreasonable. <u>Id</u>. If the Court determines that the state court decision is objectively
25 unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the
26 error had a substantial and injurious effect on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619,
27 637 (1993).

28  Petitioner has the burden of establishing that the decision of the state court is contrary to

7

or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir. 2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

The AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), overruled by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

Normally, when the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991). In this case, there is no reasoned state court decision below to review. In such a case, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 784 (2011). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 786. Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

///

///

**C.     Review of Claims**

1. <u>Prosecution Witness's Immunity</u>

Petitioner argues that the trial court did not follow the procedures for granting a witness immunity that are set forth in California Penal Code § 1324. (Pet. at 32). This claim was presented to the California Supreme Court as part of Petitioner's state petition for writ of habeas corpus. The California Supreme Court summarily denied the petition with no citation.

Petitioner argues that the trial judge offered witness Pablos Avalos immunity before the prosecution offered Avalos immunity, in violation of California Penal Code Section 1324. (Pet. at 33). Respondent argues that this claim cannot be reviewed on federal habeas, because it is a state law claim that the California Supreme Court rejected. (Answer at 19). When a state court makes a determination on state law questions, those determinations are not reviewable in a federal habeas petition. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). In the absence of an applicable holding, this Court cannot find that the state court's decision was an unreasonable application of clearly established federal law. <u>See</u> <u>Carey</u>, 549 U.S. at 77. Therefore, Petitioner's claim is foreclosed to federal habeas review.

Moreover, Petitioner's argument that his rights were violated because "the prosecution never requested immunity for Pablo Avalos as mandated by Penal Code § 1324" is clearly without merit. (Pet. at 33). In fact, § 1324 is inapplicable to the present case. California Penal Code Section 1324 concerns situations in felony proceedings or investigations where a witness refuses to answer a question and a prosecutor does not offer immunity to the witness, and specifically states that "[n]othing in this section shall prohibit the district attorney or any other prosecuting agency from requesting an order granting use immunity or transactional immunity to a witness compelled to give testimony or produce evidence." Here, the prosecutor told the trial court that "we would be willing to extend to this witness use immunity based on anything he may say during the course of this trial." (4RT at 352). The trial court instructed the jury that Mr. Avalos was testifying following the prosecutor's promise of immunity.   (4RT at 382). Therefore, it is clear that the prosecutor was willing to offer immunity to Avalos, and, in fact, did offer immunity to Avalos. Thus, California Penal Code Section 1324 is inapplicable to this case.

1    Although Petitioner claims that a witness being granted immunity hinders defense's
2 questioning of a witness and lowers the prosecution's burden of proving guilt beyond a
3 reasonable doubt, he provides no support for his statements. (Traverse at 15). Petitioner has
4 failed to identify any clearly established federal law to support his proposition that the witness
5 was improperly granted immunity. Therefore, this claim should be denied.

6       2. <u>Ineffective Assistance of Counsel of Appellate Counsel</u>

7    Petitioner alleges that his appellate counsel failed to present the arguments which he
8 raises in this federal habeas petition. (Pet. at 34).

9    Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the
10 Fourteenth Amendment. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985). Claims of ineffective
11 assistance of appellate counsel are reviewed according to <u>Strickland's</u> two-pronged test. <u>Miller
12 v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989); <u>United States v. Birtle</u>, 792 F.2d 846, 847 (9th
13 Cir. 1986). First, the petitioner must show that counsel's performance was deficient, requiring a
14 showing that counsel made errors so serious that he or she was not functioning as the "counsel"
15 guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that
16 "counsel's representation fell below an objective standard of reasonableness," and must identify
17 counsel's alleged acts or omissions that were not the result of reasonable professional judgment
18 considering the circumstances. <u>Harrington</u>, 131 S.Ct. at 787 (citing <u>Strickland</u>, 466 U.S. at 688);
19 <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995).

20   The presumption that counsel acted reasonably is even stronger for appellate counsel
21 because he has wider discretion than trial counsel in weeding out weaker issues; doing so is
22 widely recognized as one of the hallmarks of effective appellate assistance. <u>Miller</u>, 882 F.2d at
23 1434. Appellate counsel must exercise professional judgment in selecting issues to be raised on
24 appeal and does not have the duty to raise every claim suggested by a client. See <u>Jones v.
25 Barnes</u>, 463 U.S. 745, 754 (1983). Appellate counsel does not render ineffective assistance
26 when he fails to raise a meritless legal argument. See <u>Shah v. United States</u>, 878 F.2d 1156,
27 1162 (9th Cir. 1989). In the absence of showing that, but for appellate counsel's failure to raise
28 the omitted claim(s), there is a reasonable probability that the petitioner would have prevailed on

1  appeal, neither Strickland prong is satisfied.  See Moorman v. Ryan, 628 F.3d 1102, 1009 (9th
2  Cir. 2010), cert. denied, __ U.S. ___, 132 S.Ct. 346, 181 L.Ed.2d 217 (2011).

3  As previously stated, Petitioner's claim concerning Avalos's immunity is without merit. Because there is no reasonable probability that such a claim would have been successful on appeal, appellate counsel's failure to raise the issue does not constitute ineffective assistance. See Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000).  Therefore, it was reasonable for Petitioner's appellate counsel to not bring those claims before the Fifth Appellate District during direct appeal.  A reasonable jurist could agree that the state court decision was correct that appellate counsel was not ineffective for failing to raise this claim on direct appeal.

Petitioner also argues that his appellate counsel should have argued on appeal that the trial court erred when it denied his motion to suppress.  Petitioner argues that law enforcement conducted an unlawful search of his house on July 13, 2011, when they conducted the second search.  The trial court conducted a testimonial hearing on Petitioner's motion to suppress and then found that law enforcement had conducted a lawful consent search.  (1RT$^5$).  On August 16, 2011, Petitioner filed his notice of motion to suppress all evidence including statements that were illegally obtained as a result of the violation of Petitioner's Fourth Amendment rights.  On August 31, 2011, the prosecution filed its opposition to Petitioner's motion to suppress.  The prosecution argued that Petitioner's girlfriend, who had the authority to consent, gave her consent for the officers to search the house and the backyard.

Detective Checklenis testified at the suppression hearing that Ms. Garza answered the door of the Petitioner's house and stated that he and Officer Amos could go inside the house for the purpose of investigating an automobile theft.  (1RT9:13 to 1RT10:9; 1RT10:18-22).  Detective Checklenis testified that Ms. Garza stated that she lived at the residence with Petitioner and a minor child.  (1RT10:10-17).  He testified that after he looked around the house, he asked Ms. Garza if he could go into the backyard, and he told her that they were looking for the victim's wallet and keys.  (1RT10:23 to 1RT11:18).  He testified that Ms. Garza stated that the

---

[5] 1RT refers to Reporter's Transcript on Appeal, volume 1, pages 2-100, which was lodged by Respondent with his Answer.

officers could search the backyard. (1RT11:9-18). He testified that Ms. Garza never told the officers to stop. (1RT11:28 to 1RT12:2). He testified that he never specifically received permission to lift the blanket that was covering the victim's keys and wallet. (1RT14:28 to 1RT15:8).

Ms. Garza testified that officers never asked to search the outside area. (1RT19:8-18). She testified that she gave consent for the officers to search the house. (1RT19:3-7; 1RT19:15-16). Petitioner argues that after Detective Checklenis didn't find anything of interest inside the house, he returned to his patrol car, and then went to search the backyard without having consent to search the backyard.

In California state courts, for a consent search to be valid, a person with the authority to consent must voluntarily give law enforcement the consent to search. See People v. Jenkins, 22 Cal.4th 900, 973 (2000) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). A person has authority to give consent to search his or her own residence, and sometimes the authority to search personal property found within the premises. Jenkins, 22 Cal.4th at 973. It is a lawful search if it was objectively reasonable for the officer to believe that the item searched was within the scope of the consent. Id. (citing Florida v. Jimeno, 500 U.S. 248, 251 (1991)). In Jimeno, the United States Supreme Court held that the consent to search the vehicle extended to containers within the car which might bear the drugs which the officers stated they were search for and the defendant didn't limit the scope of the search. Jimeno, 500 U.S. at 251. The Court further held that law enforcement is not required to request to search each container in the search area. Id. a 251-52. California state courts have adopted the United States Supreme Court's holding that a consent to search usually includes consent to open closed containers in pursuit of the object of the search. See Jenkins, 22 Cal. 4th at 975, People v. $48,715 United States Currency, 58 Cal. App.4th 1507, 1515 (1997).

In this case, Ms. Garza had the authority to consent to the search of the house and the backyard, because she possessed common authority over the premises. See Jenkins, 22 Cal. 4th at 976 (quoting United States v. Matlock, 415 U.S. 164, 170 (1974)). It was objectively reasonable for the officers to believe that when Ms. Garza gave consent for them to search the

12

backyard, she gave consent to search any closed containers in the backyard. The victims' wallet and keys were found underneath a blanket, and the location of the keys and wallet was within the scope of the consent to search. Detective Checklenis explained to Ms. Garza that he was looking for the victim's wallet and keys. When she granted open-ended consent to the search of the house, and subsequently, the backyard, she had been informed that the officers were seeking evidence concerning her boyfriend.

Therefore, it would have been futile for Petitioner's appellate counsel to raise a claim that the trial court erred in denying the motion to suppress. Because there is no reasonable probability that such a claim would have been successful on appeal, appellate counsel's failure to raise the issue does not constitute ineffective assistance. See Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000). Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Thus, this claim should be rejected.

### 3. Cumulative Error

Petitioner claims that the cumulative effect of the trial errors prejudiced him. (Pet. at 36-37). Petitioner identifies the trial errors as the claims which he raised in his federal petition. (Pet. at 36-37).

The Ninth Circuit has held that "[c]umulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." Jackson v. Brown, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000)). If the court determines that no error occurred, there can be no basis for a finding of cumulative error. See Boyden v. Brown, 404 F.3d 1159, 1176 (9th Cir. 2005).

As previously stated, this Court does not find that Petitioner has substantiated any of his claims for trial errors, and therefore, there is no merit to his claim that the cumulative effect of the trial errors prejudiced him. Thus, this claim should be denied.

///

///

## IV.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 21, 2015**            **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE